# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**DEREK LICHTENWALTER,**

    **Petitioner,**

    v.

**WARDEN, BELMONT CORRECTIONAL INSTITUTION,**

    **Respondent.**

Case No. 2:20-cv-1559
Judge Edmund A. Sargus, Jr.
Magistrate Judge Kimberly A. Jolson

## REPORT AND RECOMMENDATION AND ORDER

Petitioner, a state prisoner, has filed this petition for a writ of habeas corpus. (Doc. 3). This matter is before the Court on several of Petitioner's Motions, in addition to his Petition and Supplemental Brief in support, Respondent's Return of Writ, Supplemental Memorandums Supporting the Return of Writ and Response to the Supplemental Brief, Petitioner's Traverse, Respondent's Evidence, Petitioner's Evidence and Response to Respondent's Evidence, Respondent's Reply, and the exhibits of the parties.

Regarding the miscellaneous pending motions, Petitioner's Motion for Discovery and Evidentiary Hearing, Request for Injunctive Order and Declaratory Judgment, Motion for Bond, and the motions to intervene and for "Inter Question" (Docs. 8, 9, 15, 37–40) are **DENIED**. Petitioner's Motion to File Under Seal (Doc. 68) is **DENIED**. Respondent's unopposed Motion for Order to Take Judicial Notice (Doc. 50) is **GRANTED**. Finally, and most importantly, it is **RECOMMENDED** that this action be **DISMISSED**.

    **I.**     **BACKGROUND**

Petitioner asserts that, in light of his specific health concerns, his continued incarceration during the COVID-19 pandemic is unconstitutional. (*See generally* Doc. 3). He seeks immediate release as a result. (*Id.*).

By way of background, on December 2, 2019, Petitioner pled guilty in the Guernsey County Court of Common Pleas on the charge of failure to comply with the order or signal of a police officer. (*See id.* at 1). He was sentenced to 30 months' imprisonment and is currently serving his sentence at Belmont Correctional Institution ("BeCI"). (*Id.*). As noted, Petitioner does not challenge his underlying criminal conviction but instead seeks immediate release as an allegedly immune-compromised inmate. (Doc. 5, PAGEID # 30). Petitioner's attached medical records indicate that he is 44-years-old and HIV positive. (Doc. 10-1, PAGEID # 366).

Petitioner initially sought relief in state court, and on April 16, 2020, the Ohio Supreme Court summarily dismissed his action for failure to state a claim. (Doc. 5, PAGEID # 166). Petitioner, through counsel, immediately moved for emergency withdrawal of his guilty plea on these same grounds. (Doc. 10-1, PAGEID # 358–65). The trial court denied Petitioner's motion. (*Id.*). Petitioner also unsuccessfully applied for clemency and sought a sentence commutation based on the impact of COVID-19. (*Id.*, PAGEID # 401–03). Additionally, he has filed repeated grievances within the prison system. (*Id.*, PAGEID # 406–427).

Petitioner filed this action on March 26, 2020. (Doc. 1). In addition to being HIV positive, Petitioner asserts that he suffers from hypertension and previously suffered a partially collapsed lung and punctured diaphragm. (Doc. 10, PAGEID # 224). He states that he sleeps in a dormitory holding approximately 130 inmates, and beds are less than four feet apart. (Doc. 36, PAGEID # 606). Further, he contends that inmates eat in a communal setting and wash hands twice daily while in close proximity to each other. (*Id.*). Also, Petitioner shares a bathroom with 20 to 40

prisoners. (*Id.*). He also asserts that inmates and prison staff do not appropriately wear face masks. (*Id.*, PAGEID # 607).

All told, Petitioner says there is nothing BeCI can do to cure the unconstitutional risk to his life posed by the pandemic. (*See* Doc. 36, PAGEID # 608) ("There is no way to avoid an unacceptably large risk to the life of immunocompromised Petitioner [] other than ordering him released temporarily until the COVID-19 pandemic has subsided."). Petitioner thus seeks immediate release as his only remedy. (*See* Doc. 3).

Procedurally speaking, less than two months after he brought this action, the Court appointed Petitioner counsel and set an evidentiary hearing for August 2020. (Docs. 14, 44). Respondent attempted to stay the case and appeal the Undersigned's decision setting an evidentiary hearing. (Doc. 51). On December 9, 2020, Judge Sargus denied Respondent's requests, and the Undersigned reset the evidentiary hearing for January 19, 2021. (Docs. 58, 59, 60). Roughly two weeks later, the Court granted Petitioner's request for substitution of counsel. (Docs. 61, 62). Petitioner's new counsel requested an extension to familiarize themselves with Petitioner's case, and the Court continued the hearing to February 2, 2021. (Docs. 63, 64).

As these procedural matters unfolded, the law on Eighth Amendment COVID-19 claims began to take shape. Indeed, much has changed since Petitioner brought this case in March 2020. Significantly, in June 2020, the Sixth Circuit addressed a claim similar to Petitioner's. *See Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020). The Circuit provided clear guidance on what is expected of institutions to combat the spread of COVID-19. (*Id.*). Following that guidance, district courts often have been able to resolve an Eighth Amendment claim without an evidentiary hearing. *See e.g.*, *Mescall v. Hemingway*, No. 2:20-11110, 2020 WL 4584028, at *7 (E.D. Mich. Aug. 10, 2020). Based upon these developments, the Court vacated the evidentiary hearing so that it could

consider the parties' evidence in light of this controlling standard. (Doc. 67). As explained further below, an evidentiary hearing is not necessary to resolve Petitioner's request for relief.

## II. Procedural Issues

Before considering the merits of Petitioner's deliberate indifference claim, the Court first addresses several procedural issues that Respondent says bars this Court from hearing the case. To start, Respondent asserts that the Court should dismiss this action as inappropriately brought under the provision of 28 U.S.C. § 2241 or § 2254 or, alternatively, as unexhausted due to Petitioner's failure to present his federal claim to the Ohio courts. (*See* Docs. 6, 43, 53). Additionally, Respondent contends that the Supreme Court's decision in *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011), prevents the Court from considering any evidence not presented to the Ohio Supreme Court in state habeas corpus proceedings. (*See* Doc. 66). As explained below, none of Respondent's arguments preclude the Court from addressing Petitioner's claim on the merits.

### A. Habeas Action

To begin, Respondent's argument that Petitioner's case does not sound in habeas is unavailing. The Sixth Circuit's decision in *Wilson v. Williams* confirms this. *See* 961 F.3d at 838. There, the Court held that prisoners, like Petitioner, seeking immediate release due to health risks associated with COVID-19 could file a petition for a writ of habeas corpus under the provision of 28 U.S.C. § 2241. *See id.* (citing *Preiser v. Rodriguez*, 411 U.S. 475, 498 (1973)) ("[R]elease from confinement . . . is the heart of habeas corpus."); *see also Cameron v. Bouchard*, 815 F. App'x 978, 983 n.1 (6th Cir. 2020) (relying on *Wilson* and permitting pre-trial detainees and state prisoners to proceed with COVID-19 claims under § 2241); *Aultman v. Shoop*, No. 2:20-cv-3304, 2020 WL 4287535, at \*1 (S.D. Ohio July 27, 2020) (relying on *Wilson* and holding that plaintiff's request for immediate release from custody failed to state a claim under 42 U.S.C. § 1983 and

4

must be brought under the provision of 28 U.S.C. § 2241); *Blackburn v. Noble*, 479 F. Supp. 3d 531, 538 (E.D. Ky. 2020) (collecting cases and citing *Wilson* in finding that 28 U.S.C. § 2241 provides an avenue of relief for state prisoners seeking immediate release based on COVID-19).

Respondent relies on the Sixth Circuit's decision in *Bradley v. Shoop*. (Doc. 70, PAGEID # 1857 (citing No. 2:20-cv-3897, 2021 WL 688859 (6th Cir. Jan. 8, 2021)). There, the Sixth Circuit denied the state prisoners' request for a certificate of appealability from the dismissal of an action based on the impact of COVID-19 as improperly brought under 28 U.S.C. § 2254. (*Id*). The petitioners in *Bradley* sought release to a halfway house, home confinement, furlough, or community supervision. (*Id*.). Here, Petitioner seeks immediate release, so *Bradley* is factually distinguishable.

Further, in denying the request for a certificate of appealability, the Sixth Circuit acknowledged that it had permitted the claim under the provision of 28 U.S.C. § 2241:

> True, the Sixth Circuit recently permitted federal inmates to bring a claim similar to Bradley's under 28 U.S.C. 2241. *See Wilson v. Williams*, 961 F.3d 829, 838–39 (6th Cir. 2020). But Bradley petitioned under 28 U.S.C. § 2254, not 28 U.S.C. § 2241, and "our interpretation of § 2241 does not control our interpretation of § 2254." *Bailey v. Wainwright*, 951 F.3d 343, 347 (6th Cir. 2020). Nor does anything require "courts to convert § 2254 petitions to petitions under § 2241[.]" *Allen v. White*, 185 F. App'x 487, 489 (6th Cir. 2006).

*Bradley*, 2021 WL 688859, at *2.

Yet, at least some district courts, relying on Sixth Circuit precedent, have held that state prisoners must bring this type of claim under 28 U.S.C. § 2254, not § 2241:

> But Jaeger's purported amended emergency petition [] is not governed by 28 U.S.C. § 2241. "'[R]egardless of the label on the statutory underpinning for [a] petition, habeas petitions of state prisoners are governed by 28 U.S.C. § 2254,' not § 2241." *Makin v. Wainwright*, No. 3:20 CV 912, 2020 U.S. Dist. LEXIS 93364, 2020 WL 2770040, at *1 (N.D. Ohio May 29, 2020) (quoting *Byrd v. Bagley*, 37 F. App'x 94, 95 (6th Cir. 2002)); *see Sewell v. Brown*, No. 2:20-cv-77, 2020 U.S. Dist. LEXIS 113627, 2020 WL 3542154, at *1 n.1 (W.D. Mich. June 30, 2020)

5

> ("Although petitioner purports to bring his action under 28 U.S.C. § 2241, habeas corpus actions brought by 'a person in custody pursuant to the judgment of a State court' are governed by 28 U.S.C. § 2254"). Conditions of confinement claims—such as those relating to conditions within a prison during a pandemic—are typically "properly brought under § 1983 and are not cognizable on habeas review." *Sewell*, 2020 U.S. Dist. LEXIS 113627, 2020 WL 3542154, at *2. However, when a petitioner seeks release from custody, as Jaeger does here (Doc. No. 31-1 at 1323-24), such a claim is "available only upon habeas corpus review." *Id.*

*Jaeger v. Wainwright*, No. 1:19-cv-2853, 2020 WL 3961962, at *3 (N.D. Ohio July 7, 2020).

Initially, Petitioner in fact brought his petition under § 2241, but then his court-appointed counsel—perhaps relying on cases like *Jaeger*—pivoted to using § 2254. (*See, e.g.*, Doc. 36, PAGEID # 609 ("There is only one remedy of the writ of habeas corpus available to state prisoners; § 2254 is the implementation of for state prisoners of the statutory authority conferred on courts by § 2241 to issue writs of habeas." (citing *Allen v. White*, 185 F. App'x 487 (6th Cir. 2006))). Given the uncertainty in the law—and *Wilson*'s core holding that habeas is a proper vehicle to bring these type of claims—the Court concludes that Petitioner's habeas claim is cognizable.

### B. Exhaustion

Respondent's next argument, that the Court should dismiss this action as unexhausted, is similarly unpersuasive. The record reflects that the American Civil Liberties Union ("ACLU") filed a merit brief on Petitioner's behalf in the Ohio Supreme Court raising the same claim that Petitioner raises here. (Doc. 5, PAGEID # 50–76). Respondent does not offer other potentially viable avenues of relief available to Petitioner.

Further, a federal district court may dismiss an unexhausted claim on the merits. 28 U.S.C. § 2254(b)(2); *see Cameron*, 815 F. App'x at 983 n.1 (declining to address non-jurisdictional procedural issues where claim fails on the merits). As one district court recently noted, "[a] federal habeas court may consider unexhausted claims where 'unusual' or 'exceptional' circumstances

exist." *Blackburn*, 479 F. Supp. 3d at 538 (internal quotation marks omitted) (quoting *Rockwell v. Yukins*, 217 F.3d 421, 423 (6th Cir. 2000)). And, "[a]s other Courts have observed, the current pandemic is an unusual or exceptional circumstance that could allow a federal court to consider the matter at hand." *Blackburn*, 479 F. Supp. 3d at 539 (citation omitted). So the Court will consider the merits of Plaintiff's claim despite any purported failure to exhaust.

### C. *Pinholster*

Finally, Respondent argues that the Supreme Court's decision in *Cullen v. Pinholster* precludes consideration of any evidence that the Ohio Supreme Court did not consider in Petitioner's state habeas corpus proceeding.

The Supreme Court, in *Pinholster*, held that a federal court's review under § 2254(d) of a claim adjudicated on the merits by a state court is limited to the factual record that was before the state court. *See* 563 U.S. at 182. This rule equally applies where the state court issues a summary or unexplained entry of dismissal. *See Rice v. White*, 660 F.3d 242, 251 (6th Cir. 2011) (citing *Harrington v. Richter*, 562 U.S. 86, 98 (2011) (holding that unexplained state court decisions are entitled to deference as decisions on the merits under § 2254(d))).

There are several exceptions to this rule. *Pinholster* does not apply to a federal habeas court's consideration of a claim of actual innocence. *See Mobley v. Warden, Northeast Ohio Corr. Ctr.*, No. 2:20-cv-4510, 2020 WL 7075628, at *4 (S.D. Ohio Dec. 3, 2020) (citation omitted). Nor does it apply where the court determines from the existing record that the state courts' decision was unreasonable under § 2254(d); where the state court did not adjudicate a claim on the merits but it is otherwise properly before the court for habeas review; or if the court is considering whether to excuse a procedural default. *Johnson v. Bobby*, No. 2:08-cv-55, 2018 WL 1382455, at *8 (S.D. Ohio March 19, 2018) (citing *Caudill v. Conover*, 871 F. Supp. 2d 639, 649 (E.D. Ky. 2012)).

This is not the typical case. And Respondent does not refer to, and this Court has not located any cases addressing *Pinholster* in the context of a habeas Eighth Amendment or due process claim stemming from the COVID-19 pandemic. This Court recently outlined the exhaustion requirement of a similar claim brought in an action under 42 U.S.C. § 1983 through the prison's grievance procedure. *See Smith v. DeWine*, 476 F.Supp. 3d 635, 655 (S.D. Ohio 2020). By exhausting his or her claim in this manner and via the prison's grievance procedure, a petitioner would avoid application of *Pinholster*. (*Id*.). Moreover, federal courts are divided on whether exhaustion should even be required for these claims. *See DeWine*, 476 F. Supp. 3d at 656 ("In light of the COVID-19 pandemic, federal courts are split on the issue of whether administrative remedies are currently available to prisoners."). And waiving the exhaustion requirement would avoid *Pinholster*, too.

Finally, a note of practical importance. Petitioner's Eighth Amendment COVID-19 claim necessarily requires some inquiry into the present conditions in Ohio prison facilities, which could not have been presented to the Ohio courts when Petitioner filed his petition for a state habeas corpus or mandamus petition. In other words, applying *Pinholster* here would limit the record to a point in time shortly after the onset of COVID-19 pandemic (here, in April 2020) and fail to take into account the evolving conditions, recommendations of the CDC and other health officials, and the corresponding response by prison officials. The most just path forward, therefore, is to proceed to the merits of Petitioner's claim.

**III.     STANDARD**

The Eighth Amendment requires prison officials to guarantee the safety of and provide adequate medical care to prison inmates. *Blackburn*, 479 F. Supp. 3d at 539 (citing *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

8

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general wellbeing." *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (citation omitted).

"Deliberate indifference by prison officials to an inmates' serious medical needs constitutes 'unnecessary and wanton infliction of pain' in violation of the Eighth Amendment's prohibition against cruel and unusual punishment." *DeWine*, 476 F. Supp. 3d at 661 (citing *Miller v. Calhoun Cnty.*, 408 F.3d 808, 812 (6th Cir. 2005)). "To succeed on an Eighth Amendment claim for deliberate indifference to serious medical needs, a [petitioner] must prove more than mere negligence on behalf of prison authorities." *Blackburn*, 479 F. Supp. 3d at 539 (citing *Brooks v. Celeste*, 39 F.3d 125, 127 (6th Cir. 1994); *Estelle*, 429 U.S. at 106). "[A] prison official will be liable only when he or she 'knows of and disregards an excessive risk to inmate health or safety.'" *Blackburn*, 479 F. Supp. 3d at 539 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Petitioner must establish both an objective and subjective component to obtain relief. *Cameron*, 815 F. App'x at 984. The objective component requires an inmate to "show that he is incarcerated under conditions posing a substantial risk of serious harm." *Blackburn*, 479 F. Supp. 3d at 540 (citing *Farmer*, 511 U.S. at 833). The subjective component requires the inmate to show that prison officials knew of and disregarded an excessive risk, thereby acting with deliberate indifference. *DeWine*, 476 F. Supp. 3d at 661 (citing *Farmer*, 511 U.S. at 834, 837–38).

Importantly, deliberate indifference is "'more blameworthy than negligence,' akin to criminal recklessness[,]" *Cameron*, 815 F. App'x at 984 (citing *Farmer*, 511 U.S. at 835, 839–40), and "tantamount to [an] intent to punish," *DeWine*, 476 F. Supp. 3d at 661 (citations and quotation marks omitted). Thus, prison officials who know of "a substantial risk to inmate health or safety

may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Wilson*, 961 F.3d at 840 (citing *Farmer*, at 844).

## IV.     DISCUSSION

The Court considers the parties' evidence to determine whether BeCI officials, under the mandates of the Ohio Department of Rehabilitation and Correction ("ODRC"), responded reasonably to the risk of the COVID-19 pandemic.

### A.  Respondent's Evidence

Respondent submitted 63 exhibits reflecting the ongoing efforts made by ODRC in response to the COVID-19 pandemic to attempt to prevent the spread of the virus within Ohio prisons.

On March 9, 2020, Ohio Governor DeWine declared a State of Emergency. (Doc. 66-1, PAGEID # 1525–28). Effective the following day, ODRC implemented health screening for all persons entering a prison facility. (*Id.*, PAGEID # 1533–1544). Staff members received a weekly hygiene checklist and health care personal protective equipment ("PPE") guidelines. (*Id.*, PAGEID # 1545–46, 1549). On March 16, 2020, ODRC's Director implemented additional orders requiring screening of all inmates before being transported and refusing acceptance of transferred inmates exhibiting symptoms of COVID-19. (*Id.*, PAGEID # 1550–52). On March 18, 2020, ODRC ceased random drug testing on inmates. (*Id.*, PAGEID # 1553). On March 23, 2020, and March 30, 2020, it updated interim guidance on management of COVID-19 in correctional and detention facilities and issued recommendations for preparation, prevention, and management of the virus. (*Id.*, PAGEID # 1555–85, 1587–1612). Furthermore, ODRC also required prisons to reschedule all non-emergency medical procedures and instituted policies to permit inmates to carry

medications in order to decrease pill call lines. (*Id*., PAGEID # 1586). And on March 31, 2020, ODRC permitted facilities to make cloth face masks. (*Id*., PAGEID # 1613).

On April 7, 2020, ODRC's Director issued a notice of a pandemic-driven overcrowding emergency and implemented efforts to reduce the prisons' population in Ohio. (*Id*., PAGEID # 1625–26). Effective April 8, 2020, all prison facilities designated at the "orange" level implemented a brunch meal. (*Id*., PAGEID # 1622–24). Effective April 9, 2020, eligible inmates could receive one extra food package. (*Id*., PAGEID # 1627). Effective April 15, 2020, all chaplains began working remotely. (*Id*., PAGEID # 1634). On April 20, 2020, ODRC implemented an isolation plan for each Ohio prison facility. (*Id*., PAGEID # 1637–50). Sleeping arrangement recommendations were issued by Mark H. Weir, Ph.D. (*Id*., PAGEID # 1651). Beginning April 29, 2020, staff and inmates are permitted to use personal disinfecting wipes. (*Id*., PAGEID # 1656). ODRC also implemented a housekeeping plan with a COVID-19 pandemic update including minimum requirements for disinfection efforts and housekeeping. (*Id*., PAGEID # 1712–25). On April 30, 2020, ODRC again updated PPE requirements. (*Id*., PAGEID # 1733–39).

On May 4, 2020, ODRC implemented mass testing of prison inmates and staff to manage further spread of the virus. (*Id*., PAGEID # 1652–55). Since May 11, 2020, all Ohio prisoners have received four cloth face masks which are periodically replaced. (*Id*., PAGEID # 1731, 1770). In May 2020, ODRC altered prisoner transfer procedures to minimize the impact of the spread of COVID-19. (*Id*., PAGEID # 1740–42). Also, in May 2020, the Ohio National Guard began conducting testing of prison staff for COVID-19.

Beginning June 5, 2020, ODRC mandated the following: all staff and inmates are required to wear face masks; inmates must place hands in pockets and not touch surfaces when moving

11

throughout the facility; all services must be delivered or dropped off at doors; cohort inmate workers from specific work areas must be placed in the same living area; and items must be sanitized prior to reuse. (*Id*., PAGEID # 1615). Additionally, all employee work areas must be routinely cleaned throughout the course of a shift with a disinfecting solution designated for COVID-19. (*Id*., PAGEID # 1616). ODRC also mandated changes at prison libraries to minimize transmission of COVID-19. (*Id*., PAGEID # 1619).

As of June 24, 2020, ODRC staff may obtain a COVID-19 test repeatedly and as needed at various sites free of cost. (*Id*., PAGEID # 1746–51). ODRC also created an operational modification process for a prolonged response to COVID-19 in conjunction with health experts. (*Id*., PAGEID # 1752–64). On October 13, 2020, ODRC again issued new guidance regarding the use of PPE. (*Id*., PAGEID # 1765–69). On December 2, 2020, ODRC began daily symptom screening of all inmates due to the ongoing increase in positive COVID-19 cases. (*Id*., PAGEID # 1772). On March 11, 2020, ODRC issued a project plan for compliance with new COVID-19 requirements. (*Id*., PAGEID # 1776–93).

BeCI also developed an inmate housing unit housekeeping plan with guidance for the cleaning requirements. (*Id*., PAGEID # 1794–1803). During the month of January 18, 2021, 178 of BeCI staff had reported positive COVID-19 tests; 24 staff members were currently positive; and 154 had recovered; 40 inmates were in quarantine; six were in isolation; six were currently positive; there were ten confirmed COVID-19 inmate deaths; and 118 inmates had recovered. (*Id*., PAGEID # 1804).

### B. Petitioner's Evidence

    *1. Petitioner's Motion to Seal (Doc. 68)*

The Court addresses, up front, Petitioner's request to seal medical records that are relevant to this case. (Doc. 68). Petitioner has placed these records at issue in this case. His individual health concerns are relevant to the objective component of the deliberate indifference standard. *See Sow v. Adducci*, No. 2:20-CV-2140, 2020 WL 3000425, at *3 (S.D. Ohio June 4, 2020), *report and recommendation adopted*, No. 2:20-CV-2140, 2020 WL 3415110 (S.D. Ohio June 22, 2020) (quotation marks and citations omitted) (noting that petitioner must show "a sufficiently serious medical need, in that he is incarcerated under conditions imposing a substantial risk of serious harm"). Given the significance of these records, the public has a "strong interest" in viewing this information. *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016).

Moreover, Petitioner states in his petition that he is HIV positive. And he already made a portion of his medical records public when he attached them to his state habeas corpus and mandamus petition. (*See* Doc. 10-1, PAGEID # 366; *see also* Doc. 36, PAGEID # 615). In sum, Petitioner has failed to show that his medical records should be sealed in this medical deliberate indifference case. His Motion (Doc. 68) is **DENIED** as a result.

2. *Petitioner's Submissions*

Petitioner submitted a declaration from Meghan Novisky, an assistant professor in the department of criminology, anthropology, and sociology at Cleveland State University. (Doc. 69-1). Novisky has written and published articles on the incidence and implications of COVID-19 in United States' prisons. (*Id*.). She notes, "one of the greatest challenges facing correctional facilities . . . is that prisons and jails, by their very nature, are high-risk sites for the spread of infectious disease." (*Id*., PAGEID # 1824). She asserts that close proximity, overcrowding, shard equipment tied to risky health behaviors such as tattooing, compromised abilities to maintain

general hygiene, substandard health care services, and lack of awareness about infection status, aggravate the risk associated with the spread of infectious disease. (*Id*.). She also notes that high levels of stress exposure can weaken the immune system. (*Id*.). She reports that, as of January 27, 2021, over 7,000 incarcerated adults and over 4,000 staff have contracted COVID-19. (*Id*.). One hundred and twenty-seven incarcerated people in Ohio prisons have died of COVID-19 related causes in addition to 5 "probable" deaths. Hundreds of inmates and staff are currently testing positive for COVID-19. (*Id*., PAGEID # 1825).

Novisky further opines that, "unless action is taken swiftly," Petitioner will likely face serious medical complications from COVID-19. (*Id*.). She notes that ODRC employs 10,952 staff and manages a prison population of 48,857 people. (*Id*.). This volume, combined with shared cells, dorms, bunks, supplies, living spaces, and bathing and eating areas, severely compromises the ability of prison facilities to implement social distancing practices. (*Id*., PAGEID # 1826–27). She also asserts that the reduction of prisoner visitations does little to prevent transmission of the virus, and it is difficult for prisoners to follow recommended sanitation procedures. (*Id*., PAGEID # 1827). So, she says, releasing as many older incarcerated adults and non-violent offenders will help reduce the prison population and high-risk individuals. (*Id*., PAGEID # 1828–29).

Petitioner also attaches a report indicating that, as of January 27, 2021, 188 staff at BeCI reported positive tests; 12 are currently positive, 176 have recovered; 45 inmates are in quarantine, there are ten confirmed inmate deaths, and 119 inmates have recovered. (Doc. 69-2, PAGEID # 1843). Additionally, Petitioner submits a December 15, 2020, letter from fellow BeCI inmate, Louis Warnken, who says that very little is being done by prison staff to prevent the spread of COVID-19, that there is no social distancing, mask wearing is not being enforced, and there is no regular cleaning. (Doc. 69-5, PAGEID # 1848–51).

Petitioner also submits an affidavit from another fellow inmate, James Kisner, who attests that he had a temperature, and the nurse told him to take Tylenol and return to bed as the whole dorm was presumed positive. (*Id.*, PAGEID # 1852–53). Kisner further attests that: there is no social distancing at the prison; he has been denied treatment; handwashing has created crowded spaces; and staff and inmates do not consistently wear masks. (*Id.*).

Finally, Petitioner attaches an affidavit from Charles Sheets who states that he is at high risk for COVID-19 and has been incarcerated since June 2, 2020. (*Id.*, PAGEID # 1854–55). He attests that neither inmates nor staff wear masks, though he notes he has been provided with a cloth mask. (*Id.*). He further attests that he sleeps in close proximity to another inmate and cannot socially distance. (*Id.*). He says the chow hall is crowded, as is the prison, generally. (*Id.*). For example, after 4:00 p.m., you cannot move without bumping into someone, the gym has been used for quarantine and has 100 inmates in it, and the bathroom has 8 toilets for 248 men. (*Id.*).

### C. Application

As noted, Petitioner says there is nothing BeCI can do to adequately ameliorate the health risks he suffers as an incarcerated prisoner during the COVID-19 pandemic. (Doc. 36, PAGEID # 609). He further asserts that prison officials have acted with deliberate indifference to the specific health risks he faces as an immunocompromised HIV positive individual at high risk for death or serious illness from COVID-19. (*Id.*).

As explained, Petitioner must satisfy both an objective and subjective component to obtain relief for his Eighth Amendment claim. Petitioner has satisfied the objective component here. "This Court agrees with the other district courts across the country who have found COVID-19 to be an objectively intolerable risk of harm to prisoners when it enters a prison." *DeWine*, 476 F. Supp. 3d at 662 (collecting cases); *see also Wilson*, 961 F.3d at 842 (finding a substantial risk of

15

serious harm satisfying the objective element based upon the conditions in an Ohio prison in light of COVID-19).

But Petitioner fails to satisfy the subjective component. Petitioner's assertions, for example, regarding the lack of social distancing at BeCI is an unfortunate reality of prison life. Similarly, inadequate mask enforcement by prison guards does not rise to a deliberately indifferent unreasonable failure to act warranting habeas corpus relief. Notably, "the CDC's own guidance 'presupposes that some modification of its social-distancing recommendations will be necessary in institutional settings.'" *Blackburn*, 479 F. Supp. 3d at 541 (quoting *Swain v. Junior*, 958 F.3d 1081, 1089 (11th Cir. 2020)).

And "the fact that COVID-19 has spread among [] inmates does not establish . . . the necessary state of mind to satisfy the subjective deliberate indifference prong as to the safety measures implemented to protect inmates from COVID-19." *Blackburn*, 479 F. Supp. 3d at 541 (citing *Farmer*, 511 U.S. at 844). Rather, even where "the harm ultimately [is] not averted," as long as the institution "has responded reasonably to the risk," it "has not been deliberately indifferent to the inmates' Eighth Amendment rights." *Blackburn*, 479 F. Supp. 3d at 542.

ODRC and BeCI have responded reasonably here. As discussed *supra*, they have undertaken consistent and ongoing efforts to attempt to prevent the spread of COVID-19. Prison officials have implemented procedural changes, based on guidance from health officials and CDC guidelines regarding sanitation, to: hand washing, visitation, library usage, and the use of hand wipes, among others. They have provided inmates with masks and attempted to implement changes to meal service, prison transfer policy, as well as efforts to reduce the prisoner population. Testing is being conducted on all prison inmates and staff, as well as quarantining or separation of prisoners who test positive for COVID-19.

This Court recently found these responses to be reasonable—specifically, that ODRC has engaged in "an extensive effort to combat this new disease and protect the prisoners' health and safety." *DeWine*, 476 F. Supp. 3d at 662–63. For example, ODRC swiftly responded to the pandemic, including "educating staff and inmates, tracking and distributing PPE, implementing social distancing measures among staff and inmates, increasing cleaning and sanitizing, screening visitors, staff, and inmates, cancelling visitation, quarantining those with symptoms, and implementing other policies designed to prevent COVID-19's spread." *Id*. at 663. The Court takes judicial notice of these findings and applies them here. *See Schneider v. Credit Hum. Fed. Credit Union*, No. 4:20-cv-1747, 2021 WL 147050, at *1 n. 2 (N.D. Ohio Jan. 15, 2021) (collecting cases and noting that federal courts may take judicial notice of proceedings in other courts of record, especially where those proceedings have a direct relation to matters at issue).

Importantly, "the Sixth Circuit has previously held actions such as these a reasonable response." *Id*. (citing *Wilson*, 961 F.3d at 840 (finding Bureau of Prisons' response to COVID-19 including screening for symptoms, educating staff and inmates, cancelling visitation, quarantining new inmates, implementing cleaning, providing disinfectant, and more, a reasonable response)). "Other courts around the country have also found similar actions taken in response to COVID-19 enough to preclude a finding of deliberate indifference." *DeWine*, 476 F. Supp. 3d at 663 (citing *Valentine v. Collier*, 956 F.3d 797, 802 (5th Cir. 2020) (noting that prison officials took measures recommended by the CDC, and plaintiffs offered no evidence they subjectively believed those actions were inadequate); *Swain*, 958 F.3d at 1089 (holding that neither the resultant harm in COVID-19 infections or the inability to achieve social distancing constituted a state of mind more blameworthy than negligence)).

In sum, although Petitioner has shown an objective risk of harm, he has not shown that BeCI officials were deliberately indifferent to the risks posed by this harm. To the contrary, they immediately implemented measures to protect inmates. The fact that the spread of the virus was ultimately not averted does not mean that BeCI failed to act reasonably in violation of Petitioner's Eighth Amendment rights. Petitioner has failed to establish a basis for relief as a result

## IV. DISPOSITION

For the reasons set forth above, it is **RECOMMENDED** that this action be **DISMISSED**. Additionally, Petitioner's Motion for Discovery and for Evidentiary Hearing, Request for Injunctive Order and Declaratory Judgment, and Motion for Bond, and Motions to Intervene and for "Inter Question" (Docs. 8, 9, 15, 37–40) all are **DENIED**. Respondent's unopposed Motion for Order to Take Judicial Notice (Doc. 50) is **GRANTED.**

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of

the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

  IT IS SO ORDERED.

Date: March 5, 2021          /s/Kimberly A. Jolson
                  KIMBERLY A. JOLSON
                  UNITED STATES MAGISTRATE JUDGE